Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| GABRIEL A. SIFRE ORTEGA<br><br>Demandante-Apelado<br><br>Vs.<br><br>PUERTO RICO LEGAL MARIJUANA, INC.; PRLM EDUCATIONAL, INC.; COMPAÑÍA ASEGURADORA ABC<br><br>Demandados-Apelantes | KLAN202400569 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV02091<br><br>Sala: 904<br><br>Sobre: INTERDICTO BAJO LEY DEL DERECHO SOBRE LA PROPIA IMAGEN, LEY NÚM. 139-2011; Y DAÑOS Y PERJUICIOS ESTATUTARIOS, ENRIQUECIMIENTO INJUSTO |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de noviembre de 2024.

Comparece la parte apelante, Puerto Rico Legal Marijuana, Inc. y PRLM Educational, Inc. (en adelante, parte apelante o PRLM y PRLME), a través del presente recurso de apelación, y nos solicita que revoquemos la Sentencia Parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 10 de mayo de 2024.[1] Mediante dicho dictamen, el TPI declaró Ha Lugar la moción de sentencia sumaria a favor de Gabriel A. Sifre Ortega (en adelante, Sifre Ortega o apelado) concediéndole el interdicto preliminar solicitado. Esto, luego de concluir que la presente acción no estaba desplazada por el Copyright Act de 1976. En vista de ello, se emitió

---

[1] Notificada el 13 de mayo de 2024.

Número Identificador

SEN2024 _____

un interdicto preliminar ordenando la prohibición a la parte apelante del uso de los videos de los curos descritos en las determinaciones de hechos y cualquier otro material que contuviese la imagen de Sifre Ortega sin mediar consentimiento o acuerdo por escrito.

Por los fundamentos que exponemos a continuación, se *confirma* el dictamen apelado.

## I.

## A.

El presente recurso tiene su génesis el 2 de marzo de 2024 cuando Sifre Ortega presentó una *Demanda Enmendada* al amparo de la Ley del Derecho sobre Propia Imagen, Ley 139-2011, 32 LPRA secs. 3151-3158 y de la Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, en contra de PRLM y PRLM Educational.[2] Solicitó que se emitiera un interdicto preliminar, ordenándole a la parte demandada a que se abstuviera de utilizar los videos empleados para impartir los cursos de *Introducción a la Industria del Cannabis Medicinal*, *Licencia Ocupacional y Adiestramiento para Personal de Seguridad*, en el que aparecía la imagen y la voz de Sifre Ortega como instructor. Asimismo, solicitó el remedio interdictal para recobrar los daños causados, incluyendo regalías dejadas de devengar, al igual que cualquier pérdida económica causada por el enriquecimiento injusto de la parte demandada. Por otro lado, expuso que no existió contrato o documento escrito en el cual se le otorgara a la parte demandada permiso para utilizar su imagen una vez terminada la relación laboral entre las partes. Por todo lo antes expuesto, Sifre Ortega solicitó una suma no menor de cincuenta mil dólares ($50,000.00).

---

[2] Apéndice I del recurso, en las págs. 1-13.

Así las cosas, el 4 de marzo de 2024, el TPI emitió orden y citación para que la vista interdictal fuese celebrada el 18 de marzo de 2024.[3] Posteriormente, el 7 de marzo de 2024, el TPI ordenó la presentación de prueba documental o de otra índole mediante moción en un término de cinco (5) días. Las partes hicieron lo propio. Durante la vista interdictal, las partes expresaron ante el TPI que habían dialogado y entendían que la controversia en el caso era estrictamente de derecho, estando en acuerdo sobre muchos de los hechos, en particular sobre la relación laboral de Sifre Ortega y la realización de los videos en cuestión durante dicho periodo. Luego de una breve argumentación de ambas partes, el TPI le concedió, a solicitud de la parte demandada, cinco días para que esta última sometiera una moción de sentencia sumaria, y cinco días para que parte demandante sometiera su correspondiente oposición a la solicitud.

Luego de varias instancias procesales, el 21 de marzo de 2024, la PRLM y PRMLE presentaron una *Moción de Sentencia Sumaria.[4]* En esta, arguyó que la controversia planteada en el presente caso se encontraba regulada por la ley federal de Copyright, y esta le confería todos los derechos al patrono por obras llevadas a cabo por un empleado en el curso de su empleo, incluyendo las imágenes grabadas. Por lo tanto, adujeron que en el presente caso la parte demandada era dueña de todo el contenido de la grabación del curso, imágenes, sonidos, arte y contenido. Sostuvieron que, no se utilizó la imagen de Sifre Ortega con fines comerciales, mercantiles o publicitarios porque el uso del material fue con propósitos educativos. De igual forma, argumentaron que el Sifre Ortega, como empleado de la PRLM y PRLME, prestó su consentimiento y recibió compensación por su trabajo. Por todo lo antes expuesto, solicitaron

---

[3] Apéndice del recurso, en las págs. 136-136.
[4] Apéndice V del recurso, en las págs. 80-100.

la desestimación de la demanda y la imposición de honorarios de abogado por temeridad.

El 26 de marzo de 2024, Sifre Ortega presentó su correspondiente *Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria a Favor de la Parte Demandante.*[5] A través de esta, reiteró que la ley federal de Copyright no ocupaba el campo en el presente caso y que se configuraban todos los elementos de la causa de acción invocada al amparo de la Ley 139-2011. Esbozó que la parte demandada admitió que utilizaron la imagen de Sifre Ortega en los cursos ofrecidos hasta diciembre de 2023 y manifestaron que no descartaban utilizar dichas grabaciones en el futuro. Estableció que el uso de la imagen por parte de las codemandadas no estaba dentro de algunas de las excepciones de la Ley 139-2011, supra, y no existía contrato y/o documento alguno que obre en autos donde Sifre Ortega haya transferido o renunciado al derecho sobre su imagen. Del mismo modo, sostuvo que no existía duda de que los cursos eran ofrecidos por PRLM y PRLME con fines de lucro y comerciales, pues así se promocionaron y mercadearon a través de distintas redes sociales. Por todo lo antes expuesto, solicitó que se expidiera un interdicto preliminar y permanente en contra de PRLM y PRLME para que se detuviera el uso no autorizado de su imagen a tenor con lo dispuesto en el Art. 4 de la referida ley.

En respuesta, el 31 de marzo de 2024, PRLM y PRLME presentaron un escrito de *Oposición a Moción a Sentencia Sumaria del Demandante.*[6] Argumentaron que Sifre Ortega carecía de una causa de acción y que la ley federal de Copyright le reconocía un derecho propietario como autor de los videos. Este hecho, impedía la interferencia de una ley estatal con el uso, exhibición y reproducción. De igual forma, esbozaron que la Ley 139-2011,

---

[5] Apéndice VI del recurso, en las págs. 101-126.
[6] Apéndice VII del recurso, en las págs. 127-134.

*supra*, no iba dirigida a los hechos del presente caso, o, en la alternativa, que los actos de PRLM y PRLME caían bajo las excepciones de dicha ley.

Luego de evaluar los argumentos presentados por las partes, el 13 de mayo de 2024, el TPI emitió la *Sentencia Parcial* que nos ocupa. En la misma, el tribunal desglosó las siguientes "Determinaciones de Hechos":[7]

1. El demandante, Sr. Gabriel A. Sifre Ortega, es mayor de edad, soltero, abogado de profesión y vecino de San Juan, Puerto Rico.

2. La codemandada, Puerto Rico Legal Marijuana Inc., ("PRLM"), es una corporación doméstica organizada bajo las leyes de Puerto Rico, con oficina designada en San Juan, Puerto Rico.

3. La codemandada, PRLM Educational, Inc. ("PRLME"), es una corporación sin fines de lucro organizada bajo las leyes de Puerto Rico, con oficina designada en San Juan, Puerto Rico.

4. El Demandante prestó servicios profesionales a los Demandados desde el 2018 hasta el 9 de septiembre de 2020, cuando pasó a formar parte de la plantilla regular de empleados.

5. Como parte de sus funciones, el Demandante impartía los cursos de: 1) Introducción a la Industria de Cannabis Medicinal, Licencia Ocupacional y 2) Adiestramiento para Personal de Seguridad.

6. Siendo empleado de la empresa, el Demandante accedió a grabar ambos cursos en el 2022 para utilizarse como herramientas de trabajo, contestando preguntas y dudas a medida que se presentaba en la grabación, en tiempo real.

7. En los cursos grabados se podía apreciar la imagen y voz del Sr. Sifre Ortega como conferenciante de los videos.

8. El curso de Introducción a la Industria de Cannabis Medicinal se brindaba en frecuencia de dos (2) veces al mes y el curso de Adiestramiento para Personal de Seguridad una (1) vez al mes, con seis (6) horas de duración cada uno.

9. El curso de Introducción a la Industria de Cannabis Medicinal que se ofrecía virtualmente tenía un costo de $97.00 por persona, mientras que el curso de

---

[7] Apéndice VIII del recurso, en las págs. 136-138.

Adiestramiento para Personal de Seguridad tenía un costo de $75.00 por persona.

10. Los cursos de Introducción a la Industria de Cannabis Medicinal y de Adiestramiento para el Personal de Seguridad eran promocionados por PRLME a través de la plataforma *Eventbrite*.

11. Los cursos dados y promocionados por las codemandadas PRLM y PRLME a través de la plataforma *Eventbrite* se hacían con fines de lucro y constituían fuente de ingresos para las entidades codemandadas.

12. El último curso impartido por el Demandante fue el 18 de abril de 2023.

13. El último día de trabajo del Demandante para los Demandados fue el 30 de abril de 2023.

14. El 9 de mayo de 2023, el Demandante le solicitó a los Demandados la remoción de su imagen de los videos utilizados para impartir los cursos.

15. Los Demandados confirmaron el recibo de la comunicación sin acción posterior.

16. A más de ocho (8) meses de haber concluido la relación laboral y del Sr. Sifre Ortega haber exigido de manera expresa la remoción de su imagen de los cursos en cuestión, el 12 de diciembre de 2023, advino en conocimiento de que las codemandadas continuaban haciendo uso de su imagen en los referidos cursos.

17. El 15 de diciembre de 2023, el Demandante comunicó nuevamente su solicitud para detener el uso de los videos en controversia.

18. El 9 de enero de 2024, los Demandados respondieron informando que no será hasta febrero de 2024 que tuvieran los nuevos cursos sin la imagen de la parte demandante.

19. No existe acuerdo por escrito en donde el Demandante haya concedido los derechos u otorgado una licencia a la parte demandante para el uso de su imagen, incluyendo su imagen, su voz, atributo o cualquier representación que le identifique ante un observador o escucha promedio.

20. No existe contrato de trabajo que contenga la descripción o alcance de tareas numeradas del puesto que ocupó el Demandante.

21. El uso de la imagen del Sr. Sifre Ortega nunca fue objeto de negociación entre las partes, ni antes, ni durante ni luego de la relación laboral.

Así las cosas, el foro apelado declaró Ha lugar la moción de sentencia sumaria presentada por Gabriel A. Sifre Ortega concediendo el interdicto preliminar.[8] La parte apelante presentó Moción Solicitando Determinaciones de Hechos adicionales y Reconsideración de Sentencia. El Tribunal la declaró No Ha Lugar el 22 de mayo de 2024.[9] Inconforme con tal determinación, la parte apelante presentó este recurso ante nos y le imputó al TPI la comisión de los siguientes errores:

A. Err[ó] el TPI al emitir un interdicto preliminar sin cumplirse con los requisitos de la Regla 57 de Procedimiento Civil.

B. Err[ó] el TPI como cuestión de derecho al resolver que el campo no está ocupado por Federal de Copyright Act, 17 USC 101 et seq.

C. Err[ó] el TPI al concluir que las Demandadas, entidades sin fines de lucro, "operaban con fines de lucro", "se lucr[ó] de los cursos y se lesión[ó] el patrimonio del demandante", sin existir evidencia en el expediente.

D. Err[ó] el TPI al concluir que las demandadas no caen en las exclusiones de la Ley 139-2011, bajo uso educativo y cuando media un interés público.

E. Err[ó] el TPI al omitir considerar y resolver la defensa de prescripción bajo la Ley 139-2011.

El 8 de julio de 2024, Sifre Ortega comparece ante nos mediante el escrito titulado *Alegato de la Parte Apelada*. A través del referido escrito, solicitó que se desestimara el presente recurso de apelación por ser inoficioso. En la alternativa, solicitó que se declarara No Ha Lugar la apelación, pero que se modificara la *Sentencia Sumaria Parcial* a los únicos efectos de aclarar que el interdicto emitido es estatutario, según lo dispuesto en la Ley 139-2011, supra. Esto último, para establecer que esto tiene efecto permanente en contra de PRLM y PRLME y de esta forma se detuviera el uso no autorizado de la imagen de Sifre Ortega de

---

[8] Apéndice VIII del recurso, en las págs. 135-148.
[9] Apéndice IX y X del apéndice del recurso de apelación, en las págs. 149-159.

manera permanente, quedando, así como único asunto pendiente de dirimir, la cuantía de daños.

Examinado el recurso en su totalidad y con la comparecencia de las partes, procedemos a establecer el derecho aplicable y resolver.

## II.

### A.

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009[10], es un vehículo para asegurar la solución justa, rápida y económica de un caso.[11] Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita.[12] Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación.[13]

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio.[14] Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico.[15] Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción.[16]

---

[10] 32 LPRA Ap. V, R. 36.
[11] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); Oriental Bank v. Caballero García, 212 DPR 671 (2023); G*onzález Meléndez v. Municipio Autónomo de San Juan y otros*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro. v. ELA y otros.*, 211 DPR 455 (2023).
[12] *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022).
[13] 32 LPRA Ap. V, R. 36.1 y 36.2.
[14] *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020).
[15] *Íd.*
[16] *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido.[17] Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido".[18]

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación".[19] Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho.[20]

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte

---

[17] 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, en la pág 8; Pérez Vargas v. Office Depot, 203 DPR 687 (2019).
[18] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).
[19] *León Torres v. Rivera Lebrón*, en la pág. 43.
[20] *Íd.*

sentencia sumaria en su contra.[21] Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil.[22] En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa.[23] De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente.[24] Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida.[25] Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley.[26]

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad.[27] Un hecho material es aquel que puede afectar el resultado de la

---

[21] *Íd.*
[22] *Íd.*
[23] *Íd.*
[24] *E.L.A. v. Cole*, 164 DPR 608, 626 (2005).
[25] *Íd.*, en la pág. 625.
[26] *León Torres v. Rivera Lebrón*, en la pág. 44.
[27] *Acevedo y otros v. Depto. Hacienda y otros; Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR en la págs. 980-981.

reclamación de acuerdo con el derecho sustantivo aplicable.[28] Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes.[29]

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia.[30] Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. [31]

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria.[32] Por ello, nuestra revisión es una de novo y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, así como de su jurisprudencia interpretativa.[33] A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando

---

[28] *Oriental Bank v. Caballero García*, en la pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[29] *Íd.*
[30] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR en las págs. 118-119.
[31] *Roldán Flores v. M. Cuebas et al.*, 199 DPR en la pág. 679.
[32] *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120 2013 DPR__(2024); *Serrano Picón v. Multinational Life Insurance Company*, 212 DPR en la pág. 993; *González Meléndez v. Municipio Autónomo de San Juan y otros*, 212 DPR en la pág. 611; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).
[33] *González Meléndez v. Mun. San Juan et al.*, 212 DPR en la pág. 618.

todas las inferencias permisibles a su favor.[34] De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar de novo si el foro primario aplicó correctamente el derecho.[35]

**B.**

En nuestro ordenamiento jurídico, el derecho a la propia imagen está cimentado en el derecho a la intimidad consagrado en nuestra constitución. Se dispone puntualmente que "[t]oda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar".[36]

Por otro lado, la Ley del Derecho Sobre la Propia Imagen[37] integró a Puerto Rico el derecho a la propia imagen de manera estatutaria, como corolario de la jurisprudencia y la constitución que proveyó un derecho al titular de la imagen erga omnes de excluir la reproducción y publicación de la propia imagen por un tercero que carece del consentimiento para ello.[38]

En el Art. 2 de la referida ley, define "imagen" como el nombre, fotografía, retrato, voz, firma, atributo o cualquier representación de una persona que sirva para identificar a esa persona, ante un observador o escucha promedio, mediante cualquier procedimiento o técnica de reproducción".[39] Por su parte, el Art. 3 sobre causa de acción, establece lo siguiente:

> Cualquier persona natural o jurídica que utilice la imagen de otra persona con fines o propósitos comerciales, mercantiles o publicitarios, sin el consentimiento previo de ésta, de la persona que posea una licencia sobre tal imagen, de los herederos en caso de haber fallecido o del agente autorizado de uno de éstos, responderá por los daños causados.
> En el evento de no obtenerse el consentimiento requerido en esta Ley, la persona afectada podrá presentar una acción para detener la utilización de

---

[34] *Meléndez González et al. v. M. Cuebas*, 193 DPR en la pág. 118.
[35] *González Meléndez v. Mun. San Juan et al.,* 212 DPR en la pág. 611.
[36] Art. II Sec. 8, Const. ELA.
[37] Ley del Derecho Sobre la Propia Imagen, Ley Núm. 139-2011, 32 LPRA secs. 3151-3158.
[38] *Vigoreaux Lorenzana v. Quizno's*, 173 DPR 254 (2008).
[39] 32 LPRA sec. 5151, inciso b.

dicha imagen y para recobrar los daños causados, incluyendo regalías dejadas de devengar o cualquier pérdida económica resultante de la violación del derecho aquí establecido.[40]

Para fines del estatuto, un propósito comercial es "el abuso de la imagen de una persona en conexión con el anuncio, la oferta de venta o la venta de un producto, mercancía, bien o servicio en el mercado."[41]

Por otro lado, el Art. 5 sobre transmisibilidad, dispone que los derechos bajo la ley son derechos discernibles de propiedad libremente transferibles en todo o en parte a cualquier persona o entidad con personalidad jurídica a través de una transferencia escrita, incluyendo, pero no limitándose a un contrato firmado entre las partes, poderes, licencias, donaciones y testamentos, o mediante sucesión intestada.[42] Por su parte, El Art. 7 sobre prescripción establece lo siguiente:

> "[T]oda acción o procedimiento que se lleve a cabo para hacer cumplir cualquier disposición de esta Ley **deberá iniciarse no más tarde de un (1) año a partir de la fecha en que la persona afectada adquirió o debió haber adquirido conocimiento del surgimiento de los hechos que dan pie a la causa de acción que sirve de base para dicha acción o procedimiento.**"[43]

Finalmente, como excepción a la ley, el Art. 8 de la precitada ley dispone que la ley no aplicará bajo las siguientes circunstancias:

(a) Cuando se utilice la imagen de una persona en cualquier medio como parte de un reportaje noticioso, expresión política, transmisión de evento deportivo o artístico, o una presentación que tenga un interés público legítimo, y en donde no sea utilizada con propósitos comerciales o publicitarios.

(b) Cuando se utilice la imagen de una persona como parte de una sátira o parodia, en donde el propósito principal del uso de la imagen no sea uno comercial o publicitario.

(c) Cuando se utilice la imagen con propósitos de crítica o comentario, académicos o investigativos,

---

[40] *Íd.*, sec. 3152.
[41] *Íd.*, sec. 3151, inciso h.
[42] *Íd.*, sec. 3154.
[43] *Íd.*, sec. 3156.

siempre que dicha utilización no constituya una explotación encubierta de la imagen protegida.

(d) Cuando se utilice la imagen de una persona accesoria.[44]

**C.**

En Puerto Rico los derechos de autor están fundamentalmente protegidos por el Federal Copyright Act[45], y por la Ley de Derechos Morales de Autor de Puerto Rico.[46] Nuestro ordenamiento jurídico define la propiedad intelectual como "el conjunto de derechos que la ley reconoce al autor sobre las obras que ha producido con su inteligencia, en especial lo que su paternidad le sea reconocida y respetada, así como que se le permita difundir la obra, autorizando o negando, en su caso, la reproducción".[47] Así las cosas, debemos tener presente que, a diferencia de otros tipos de propiedad, en ella coexisten valores económicos y espirituales, estos últimos intransmisibles y que facultan a su creador a mantenerla inédita y a renunciar a su autoría, entre otros derechos.[48]

Sobre las obras, los derechos sobre las mismas se agrupan en dos (2) categorías: los derechos pecuniarios o patrimoniales—que consisten en el monopolio de la explotación económica de la obra—y los personales o extrapatrimoniales, que protegen el vínculo personal entre el autor y su obra. Estos últimos dan pie a la doctrina de derecho moral.[49]

En Puerto Rico, los derechos patrimoniales están principalmente protegidos por la legislación federal que, en cuanto

---

[44] *Íd.*, sec. 3157.
[45] 17 USCA sec. 101 *et seq.*
[46] 31 LPRA sec. 1401j.
[47] *SLG Negrón-Nieves v. Vera Monroig*, 182 DPR 218, 224 (2011); *Harguindey Ferrer v. U.I.*, 148 DPR 13, 27 (1999).
[48] C. Rogel Vide, Estudios completos de propiedad intelectual, Madrid, Ed. Reus, 2003, págs. 55-56.
[49] *Sucn. Rosado v. Acevedo Marrero*, 196 DPR en las, págs. 896-897; *Ossorio Ruiz v. Srio. de la Vivienda*, 106 DPR 49, 52 (1977).

a su ámbito de aplicación, ocupa el campo.[50] Asimismo, la ley gobierna los derechos exclusivos especificados en la sección 106 del estatuto federal, con relación a las obras pictóricas, gráficas y escultóricas, entre otras, que hayan sido fijadas en cualquier medio tangible de expresión.[51] Estos derechos exclusivos sobre la obra incluyen reproducirla, preparar obras derivadas, distribuirla, representarla y exponerla públicamente.[52] La ley le confiere inicialmente a su autor estos derechos exclusivos, pero le otorga la discreción a este último de transferirlos en todo o en parte—por cualquier medio de transmisión o por operación de ley. No obstante, reconoce bajo ciertos parámetros la terminación de la transferencia de derechos.[53]

Nuestro Tribunal Supremo ha señalado que, no quedan desplazados por la legislación federal las acciones estatales que requieran elementos adicionales o distintos a los protegidos por la política federal y si los derechos que se intentan proteger tienen por fuente intereses locales de honda raíz, entre ellos el derecho moral.[54] Asimismo, la Alta Curia ha indicado que alguna de las acciones estatales que no están afectadas por el Federal Copyright Act están fundadas en violación de un contrato o de una relación fiduciaria, la invasión de la intimidad, la difamación, las prácticas comerciales engañosas, las violaciones al derecho moral de autor, entre otras.[55]

Los derechos morales, a su vez, están fundamentalmente protegidos por la legislación estatal. Esta reconoce los derechos de los autores como exclusivos de estos y los protege no solo en beneficio propio, sino también de la sociedad por la contribución

---

[50] *Íd.*, 106 DPR en la pág. 897.
[51] 517 USCA secs. 102 y 106. Véanse, *Cotto Morales v. Ríos*, 140 DPR 604, 614 (1996).
[52] 17 USCA sec. 106.
[53] *Íd.,* sec. 203.
[54] *Cotto Morales, v Rios*, 140 DPR en la pág. 615.
[55] *Harguindey Ferrer v. U.I*, 148 DPR, en la pág. 32; *Pancorbo v. Wometco de P.R., Inc.,* 115 DPR 495, 500 (1984).

social y cultural que históricamente se le ha reconocido a la propiedad intelectual. Es por ello, que la ley se fundamenta en facilitar la relación del artista con su obra y en crear un fino balance en cuanto a su control. Así, "[e]l autor... [...] tiene el derecho de beneficiarse de ella y las prerrogativas exclusivas de atribuirse o retractar su autoría, disponer su obra, autorizar su publicación y proteger su integridad, con arreglo a las leyes especiales vigentes sobre la materia".[56] Los derechos morales se derivan del nexo existente entre el autor y su creación, independientemente del valor puramente monetario que la obra pueda tener.[57] De esta forma se trata a la obra como una extensión de la personalidad del creador y los derechos sobre ella se consideran exclusivos de su autor.[58] Así, en el derecho civil tradicionalmente se ha clasificado el derecho moral de autor como un derecho personalísimo, junto a otros derecha tales como el derecho a la vida, a la libertad e integridad física, el derecho al honor, a la imagen y otros.[59]

En el Art. 1 de la precitada Ley 55-2012, define autor como toda "persona natural que genera una obra". Además, define el concepto de obra, como "creación original literaria, musical, visual (plástica o gráfica), dramática o de las partes interpretativas, artística, o de cualquier otro tipo de las que producen con la inteligencia que sea creativa, expresada en un medio, tangible actualmente conocido o que se invente en el futuro". [60]

### D.

La Regla 57 de Procedimiento Civil[61] regula el recurso extraordinario de injunction. En particular, la Regla 57 de

---

[56] 31 LPRA sec. 1401.
[57] *Íd.*, sec. 1401b.
[58] Exposición de Motivos de la Ley Núm. 55-2012, 31 LPRA § 1401j.
[59] S*LG Negrón-Nieves v. Vera Monroig*, 182 DPR en la pág. 226, citando a *Cotto Morales v. Ríos*, 140 DPR en la pág. 623.
[60] Art. 1 de Ley de Derechos de Autor de Puerto Rico, Ley Núm. 55-2012, 31 LPRA § 1401j.
[61] 32 LPRA Ap. V, R.57.

Procedimiento Civil, supra, establece la existencia de tres modalidades de injunction, a saber: (a) el entredicho provisional, (b) el injunction preliminar y (c) el injunction permanente. En síntesis, esta figura es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra.[62] Este remedio provisional se emite en cualquier momento de un pleito, después de celebrada una vista en las que las partes hayan presentado prueba en apoyo y en oposición de tal solicitud.[63] Su propósito fundamental es mantener el status quo, hasta tanto se celebre un juicio en los méritos para adjudicar la controversia en cuestión.[64]Este recurso extraordinario va dirigido a prohibir u ordenar la ejecución de determinado acto, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a persona alguna, en los casos en que no hay otro remedio adecuado en ley.[65] Nuestro Tribunal Supremo ha reiterado que la expedición de un injunction preliminar descansa en el ejercicio de la sana discreción del tribunal.[66]

Con relación al injunction estatutario, el tratadista Cuevas Segarra, expone que se trata de un recurso especial, distinto al interdicto clásico u ordinario.[67] Este tipo de interdicto especial procura la obtención de órdenes para la paralización, ya sea inmediata, provisional o permanente, de conducta contraria a la ley. Señala que no se requiere alegación, ni prueba de daño irreparable. Por lo tanto, basta con que el demandado haya violado la ley.[68] La

---

[62] *Íd.*, sec. 3421.
[63] *Mun. de Ponce v. Gobernador*, 136 DPR 776, 784 (1994).
[64] *Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 313 (2008).
[65] *ELA v. Asoc. de Auditores*, 147 DPR 669, 679 (1999).
[66] *Misión Ind. PR. v. J.P. y A.A.A.,* 142 DPR 656, 680 (1997).
[67] J. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da. Ed., Estados Unidos, Pubs. JTS, 2011, T. V, pág. 1672.
[68] *Íd.*

persona legitimada para instar el recurso debería entonces acreditarle al tribunal lo siguiente: (1) que existe una ley o reglamento que regula el uso o actividad en cuestión, y (2) que los demandados están haciendo uso o realizando una actividad en violación a la ley o reglamento.[69]

La aplicación del mecanismo del injunction requiere que los tribunales ejerzan su discreción judicial con celo y buen juicio. Asimismo, el Tribunal Supremo de Puerto Rico ha establecido que el injunction debe concederse en aquellos casos de clara necesidad y solamente ante una demostración de indudable e intensa violación de un derecho.[70] Del mismo modo, ha expresado que la decisión del tribunal de instancia para conceder o denegar la orden de injunction no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional.[71]

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

### III.

Como *primer señalamiento de error* (A), la parte apelante arguye que erró el TPI al emitir un interdicto preliminar sin cumplirse con los requisitos de la Regla 57. No le asiste la razón en su planteamiento. Veamos.

Debemos tener presente que, la *Sentencia Parcial* emitida por el TPI se limitó a resolver la controversia sobre el derecho aplicable al caso de autos. En vista de ello, procedió a conceder el interdicto bajo la Ley 139-2011, supra. Según establecimos previamente, este interdicto es conocido como interdicto estatutario y opera de forma distinta al interdicto clásico establecido en le Regla 57 de Procedimiento Civil, *supra.* El factor determinante al momento de

---

[69] *Íd.*, en las págs. 1672-1673.
[70] *APPR v. Tribunal Superior*, 103 DPR 903, 906 (1995).
[71] *ELA v. Asoc. de Auditores*, 147 DPR, en la pág. 680.

solicitar un interdicto estatutario es si la actuación se encuentra o no cobijada bajo el estatuto. En el caso de autos, el remedio provisional de interdicto se acoge bajo el Art. 4 de la Ley 139-2011, supra. Como foro revisor, no debemos intervenir en la determinación de interdicto emitida por el foro primario a menos que se demuestre que dicho foro abusó de su facultad discrecional. De un estudio exhaustivo del expediente, no apreciamos abuso alguno y concurrimos con la determinación hecha por el TPI al emitir el interdicto, según lo provisto por la ley aplicable.

En su *segundo señalamiento de error* (B), la parte apelante esboza que erró el TPI, como cuestión de derecho, al resolver que el campo no está ocupado por Copyright Act federal. [72] Sobre esto, arguye que la presente controversia gira en torno al derecho propietario a utilizar un trabajo hecho por encargo o *"work for hire"*, por un empleado en el curso ordinario de su empleo. No le asiste la razón en este planteamiento.

Al analizar la doctrina de trabajo por encargo o *"work for hire"*, es menester establecer si entre las partes se perfeccionó el contrato que así lo estableciera. Es un hecho no controvertible en el presente caso que las partes no firmaron un contrato en donde se estipulara específicamente que los trabajos en controversia hayan sido realizados por encargo. En ausencia de un contrato en el que claramente se estableciera el alcance de los trabajos contratados y la renuncia a su titularidad por parte de Sifre Ortega, a cambio de cierta remuneración, no podemos concluir que estamos ante un contrato por encargo o *work for hire*. Por lo tanto, colegimos que, concurrimos con la determinación del foro primario que dispuso que, por no estar ante un caso de Derechos de Autor o Copyright bajo el estatuto federal, el TPI ostentaba jurisdicción para atender

---

[72] 17 USC 101 et seq.

la controversia. En virtud de lo anterior, no erró el TPI como cuestión de derecho al resolver que el campo no estaba ocupado por la ley de Copyright.

Por otro lado, como *tercer señalamiento de error* (C), la parte apelante esgrime que erró el TPI al concluir que PRLM y PRLME, entidades sin fines de lucro, operaban con fines de lucro y consecuentemente determinar que el lucro adquirido de los cursos lesionó el patrimonio existente de Sifre Ortega. Nuevamente, colegimos que no le asiste la razón a la parte apelante en este planteamiento. Luego de hacer el correspondiente estudio del expediente, concluimos que no es de aplicación al presente recurso ya que intenta impugnar la carencia de evidencia en relación con los daños. Este hecho no fue adjudicado mediante la *Sentencia Parcial* apelada. La referida, se limitó a establecer el derecho aplicable en el caso. Partiendo de esta determinación, el caso continuaría su curso quedando como único asunto pendiente de dilucidar, la cuantía de los daños. En ausencia de determinación al respecto, el apelante se ve impedido de impugnar evidencia sobre daños que no fue considerada en la *Sentencia Parcial* apelada.

Como *cuarto señalamiento de error* (D), el apelante aduce que erró el TPI al concluir que la parte apelada no cae en las exclusiones de la Ley 139-20211, supra, bajo uso educativo y cuando media un interés público. Nuevamente, no le asiste la razón a la parte apelante. Aun cuando las grabaciones en cuestión son parte de un curso educativo, ello no implica que automáticamente sean consideradas bajo la excepción que provee la ley en las instancias que se utilice la imagen con propósitos académicos. El Art. 8, inciso c de la Ley del Derecho Sobre la Propia Imagen, supra, dispone claramente que la excepción académica aplica siempre que dicha utilización no constituya una explotación encubierta de la imagen protegida. Eso es precisamente lo que se alega en el caso de autos.

Por otro lado, el inciso a del referido artículo mencionado que envuelve la utilización de una presentación que tenga un interés público legítimo dispone que la excepción aplica en los casos "donde no sea utilizada con propósitos comerciales o publicitarios", *supra*. En el presente caso, no hay duda de que la utilización de la imagen de Sifre Ortega tuvo un fin comercial, pues la misma se utilizó como parte de la venta de cursos, lo que tuvo un beneficio económico para la parte apelante. El hecho de que PRLM y PRLME se dedique a impartir cursos sobre una industria altamente regulada, no convierte el material del curso en un asunto de interés público que amerite interponerse sobre el derecho de toda persona a la intimidad y a participar en la comercialización de su imagen. Ciertamente, PRLM y PRLME tenían otras maneras de continuar brindando la información del curso sin la utilización de la imagen de Sifre Ortega. A pesar de que el material intelectual le pertenezca a la parte apelante, son los atributos de la imagen de Sifre Ortega los que continuaron siendo utilizados para impartir el curso. Por lo tanto, no le asiste la razón a la parte apelante al invocar las excepciones de la Ley-139, *supra*.

Previo a continuar con la discusión de los errores, es meritorio resaltar como la parte apelante arguye paralelamente que la controversia en el presente caso está ocupada por la ley federal de Copyright, y a la misma vez que arguye que, tanto PRLM y PRLME caen dentro de las exclusiones de la Ley-139-2011, *supra*. A juicio nuestro, el segundo y el cuarto error (categorizados como B y D) no sólo son errados en Derecho, sino que evidencian una clara contradicción en el argumento del apelante. Con respecto a la controversia medular del caso, es pertinente destacar que existe una diferencia entre lo que son los derechos de autor y el derecho a la propia imagen. El presente caso trata sobre este último.

Sifre Ortega no presentó una acción en la que, cuestionando los derechos de autor, este disputó en todo momento la utilización de su imagen por PRLM y PRLME con posterioridad a la culminación de la relación laboral entre las partes. Utilización sobre la cual Sifre Ortega estableció claramente que no prestó consentimiento. No hay controversia sobre este hecho ya que ambas partes han admitido a través del proceso judicial que en ningún momento acordaron o suscribieron algún documento legal en el que se estableciera la transferencia de derechos luego de que Sifre Ortega cesara sus funciones con la parte apelante.

Finalmente, como *quinto señalamiento de error* (E), la parte apelante esgrime que erró el TPI al omitir considerar y resolver la defensa de prescripción bajo la Ley 139-2011, supra. Arguye que el término prescriptivo para incoar la causa de acción bajo la precitada ley debió comenzar a transcurrir desde la primera vez que se impartieron los cursos con la imagen de Sifre Ortega en el 2022, cuando este aun laboraba para PRLM y PRLME, y no desde el 12 de diciembre de 2023, fecha en que el demandante advino en conocimiento de que la pare apelante continúo utilizando su imagen de manera ilegal. Nuevamente, no le asiste la razón en este planteamiento.

La controversia en este pleito no versa sobre las acciones de la parte apelante durante la relación laboral. Como hemos mencionado previamente, el cuestionamiento que hace la presente acción surge de la utilización de la imagen de Sifre Ortega luego de que este culmina sus labores en PRLM y PRLME. Del expediente ante nos surge que la parte apelante nunca le informó a Sifre Ortega que continuarían utilizando los videos con su imagen luego de que cesara la relación laboral entre ambas partes. Tampoco le informó sobre su intención de sustituirlo como profesor conferenciante para continuar utilizando sus videos sin remuneración.

Le precitada ley establece el término prescriptivo de un (1) año a partir de la fecha en que la persona afectada adquirió o debió haber adquirido conocimiento del surgimiento de los hechos que dan pie a la causa de acción. Son hechos incontrovertibles en este caso que Sifre Ortega tuvo conocimiento de la utilización de su imagen el 12 de diciembre de 2023. Dos días después, el 15 de diciembre de 2023, se comunicó con la parte apelante solicitando que se detuviera el uso de los videos con su imagen. El 9 de enero de 2023, la parte apelante respondió que no sería hasta febrero de 2024 que dejarían de utilizar la imagen de Sifre Ortega. Inconforme con esta respuesta, el apelante incoó la acción que da inicio al presente pleito el 2 de marzo de 2024.  Al no existir controversia sobre estos hechos, es forzoso concluir que la presente acción no está prescrita ya que la misma se presentó dentro del término estipulado por ley.  En vista de lo anterior, no se cometió el error esbozado.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones